# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| FORTA CORPORATION, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Civil Action No. 13-1608 |
|  | ) | Hon. Nora Barry Fischer |
| SURFACE-TECH, LLC, JAS COMPANY, LLC, AND JOE STURTEVANT. | ) |  |
|  | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

A *Markman* Hearing to construe the disputed terms of U.S. Patent Nos. 8,114,514 (the "'514 Patent") and 8,142,889 (the "'889 Patent") (collectively, the "Patents-in-Suit") was held on November 12, 2014, with Special Master John W. McIlvaine, III, Esq. presiding. (Docket No. 85). During same, the Defendants objected to certain of Plaintiff's expert's testimony. (*Id.*). As such, the Court permitted Defendants to file written objections following a review of the transcript of the day's proceedings. (Docket No. 86). Defendants filed written objections, in the form of a Motion to Strike. (Docket No. 89). Special Master McIlvaine issued a Report and Recommendation as to said Motion, (Docket No. 94), which the Court adopted, (Docket No. 97). After Defendants filed a supplemental expert report, (Docket No. 100), the Special Master filed his Report and Recommendation on Claim Construction (the "R&R"), (Docket No. 101). Both parties objected to the R&R, (Docket Nos. 105, 106), and both responded to the other's objections, (Docket Nos. 108, 109). Leave for reply briefing was neither requested nor granted. As such, this matter is now ripe for the Court's disposition.

### II. STANDARD OF REVIEW

A District Court reviews a Special Master's Report and Recommendation *de novo*. FED. R. CIV. P. 53(f).

III. ANALYSIS

In the R&R, Special Master McIlvaine recommends constructions of the seventeen claim terms in dispute. (Docket No. 101 at 1–3). The Court addresses the parties' arguments *seriatim*.

    a. **Indefiniteness**

Initially, Defendants assert that Special Master McIlvaine erred in failing to address their indefiniteness arguments in his R&R. (Docket No. 105 at 2 (Quoting R&R at 14)). Specifically, Special Master McIlvaine reasoned that, because the Supreme Court's decision in *Nautilus, Inc. v. Biosig Instr., Inc.*, 572 U.S. ---, 134 S.Ct. 2120 (2104), held that indefiniteness can be found with less than a showing of insoluble ambiguity or unamenability to construction, construing a claim term at this point does not preclude a later finding of indefiniteness. (R&R at 13–14). Defendants cite a plethora of cases, both before and after *Nautilus*, where various district courts found invalidity at the claim construction stage. (Docket No. 105 at 3–4).

In response, Plaintiff argues that none of the cases Defendants cite *requires* a district court assess indefiniteness contentions at this stage. (Docket No. 108 at 4). Plaintiff also cites several post-*Nautilus* cases wherein the district court deferred deciding indefiniteness arguments until the summary judgment stage. (*Id.*). Of note is *Indus. Tech. Research Inst. v. LG Elec., Inc.*, Civ. No. 13-2016, 2014 WL 6907449 (S.D. Cal. Dec. 8, 2014), reaffirming a prior district court's reasoning that "the Federal Circuit's statements that indefiniteness is intertwined with claim construction mean only that the Court must attempt to determine what a claim means before it can determine whether the claim is invalid for indefiniteness, and not that the Court must

determine indefiniteness during the claim construction proceedings." *Id.* at *2 (quoting *ASM Am., Inc. v. Genus, Inc.*, Civ. No. 01-2190, 2002 WL 1892200, at *2 (N.D. Cal. Aug. 15, 2002).

If a claim term is insolubly ambiguous or not amenable to construction, then a court would be able, if not obligated, to so decide at the claim construction phase. *Cf. Purdue Pharm. Prods., L.P. v. Actavis Elizabeth, LLC*, 2014 WL 2624787 at *6 (D.N.J. June 11, 2014) (citing *Cacace v. Meyer Mktg. (Macau Commercial Offshore) Co.*, 812 F.Supp.2d 547, 561 (S.D.N.Y. 2011)) Since *Nautilus* held that a lesser standard must be met to show indefiniteness, it stands to reason that a court may construe a claim term and then later determine that the patent's "claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 134 S.Ct. at 2124.

The Special Master recommended constructions for all disputed claim terms. (R&R, *passim*). The Court similarly does not find any of the disputed claim terms unamenable to construction. Accordingly, Defendants' objections[1] to the Special Master's recommendations regarding indefiniteness are overruled, as the Court agrees that said issue is more appropriately addressed at the summary judgment stage in this case. *See Purdue Pharm. Prods., L.P.*, 2014 WL 2624787 at *6 (citing *Cacace*, 812 F.Supp.2d at 561).

   **b. Term #1 "outer container"**

Special Master McIlvaine recommends construing "outer container" as: "an 'outer container' is a receptacle used to hold the 'core.' An 'outer container' is separate from and cannot be integral with the contained objects." (Docket No. 101 at 1).

Plaintiff "has no objection to the first sentence of [the Special Master's] recommended construction but believes that the general principles of claim construction do not support the

---

[1] Defendants make this objection as to each claim term they argued is indefinite.

inclusion of the second sentence in the final construction of this term." (Docket No. 107). Specifically, Plaintiff asserts that the prosecution history the Special Master cites to support his second sentence does not provide an adequate basis to support same. (*Id.* at 4). To that end, Plaintiff notes the following. In response to a rejection over U.S. Patent No. 7,168,232 ("Lovett"), Plaintiff added "outer" to modify "container." (*Id.*). In the "Remarks" of this amendment, Plaintiff argued that "[t]here is nothing in Lovett to teach or suggest a core including the plurality of fiber strands twisted together and an outer container having the twisted fiber contained therein." (*Id.*). It now asserts that "the term 'outer' was recited in amended claim 12 to convey the presence of a receptacle to contain the fibers, i.e., a core of fibers, as opposed to the fibers being manipulated in a twisted configuration to hold themselves (i.e., in the absence of an outer container)." (*Id.* at 4–5). This, according to Plaintiff does not "suggest[] that the core of fibers is separate from and cannot be integral with the outer container." (*Id.* at 5). Rather, Plaintiff contends, "at most, [it] disclaimed embodiments wherein the fibers themselves were merely configured into a shape to hold together, in the absence of a container element." (*Id.* at 6).

Plaintiff further points to the specification, which states that "[t]he outer container of the asphalt reinforcement composition of the present invention encompasses and contains or holds the core." (*Id.* (citing Docket No. 75-2 at 7)). Based on this language, and the fact that there is no support in the specification to require that the "outer container" be "separate from and not integral with" the contents, Plaintiff argues that the second sentence of the Special Master's recommendation should be excised. (*Id.*).

Finally, Plaintiff argues that the second sentence of the recommended construction is "indefinite, such that the term remains subject to multiple interpretations." (*Id.* at 6). Plaintiff

4

specifically faults inclusion of the word "integral," to which the Special Master did not ascribe a specific meaning, and which is a word with multiple common meanings. (*Id.*).

Defendants once again object to Special Master McIlvaine's refusal to address indefiniteness at this juncture. (Docket No. 105 at 2). However, "[i]f the term 'outer container' is held to satisfy the 'definiteness' requirement, Defendants[] do not object to the construction of this claim phrase in the [R&R]." (*Id.*).

Defendants argue that Plaintiff's position that the second sentence of the recommended construction is not supported by the record is untenable "[b]ecause a 'container' can be a 'receptacle' for holding a 'core' [and] without the qualifying term 'outer,' the term would be superfluous." (Docket No. 109 at 3–4). They argue that Plaintiff "was only able to distinguish its claims from Lovett by adding the term 'outer,' which must be construed as surrendering at least some scope of subject matter." (*Id.* at 4 (citing R&R at 15)). According to Defendants, "[s]ince Lovett's 'container' is integral with its 'core,' the Special Master correctly determined that the 'outer container is separate from and cannot be integral with the contained objects.'" (*Id.* (citing R&R at 15–16)).

Defendants also contend that Plaintiff's indefiniteness argument fails because "the [R&R] is specific to the context in which 'cannot be integral with,' should be used." (*Id.*). In particular, they maintain, "this term sought to distinguish 'embodiments wherein, as in Lovett, the container blends into – or in and out of – the core that it contains." (*Id.*). They then assert that "[t]o the extent that there are [] indefiniteness issues, Defendants[] respectfully submit that it is due to the [Plaintiff's] lack of a drawing or any description in the Patents-in-Suit of the physical embodiment of an 'outer container.'"[2] (*Id.* at n.1).

---

[2] A patent applicant is not *required* to provide a drawing. *See* 35 U.S.C. § 113; 37 C.F.R. § 1.81.

5

Initially, the Court finds that "outer container" is amenable to construction. Therefore, as discussed, *supra*, Defendants' indefiniteness objection as to this term is overruled. The Court will address indefiniteness at summary judgment. Further, as there is no objection to the first sentence of the recommended construction, the Court adopts it.

On the other hand, Plaintiff's objections to the second sentence of the recommended construction are well taken. The addition of the requirement that the core "cannot be integral with the contained objects" could prove troubling at a later point, since, as Plaintiff points out, "integral" is left undefined. (Docket No. 107 at 6–7). If not addressed at this time, the Court foresees one of two eventualities: 1) need for an amended Claim Construction Order, defining "integral;" or 2) arguments to the jury during trial regarding the meaning of "integral," which is clearly improper. *See O2 Micro Intern. Ltd. V. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

Ultimately, the Court finds Plaintiff's description of the true meaning of "outer" is the correct one. In fact, Special Master McIlvaine seems to take Plaintiff's side, indicating that "in order to overcome Lovett, the patentee explicitly disclaimed embodiments wherein, as in Lovett, the container blends into – or in and out of – the core that it contains." (R&R at 15). He also determines that "the language of the claims, and the arguments raised during the prosecution of the patents-in-suit clarify that the 'outer container' must be different from the core that it contains." (*Id.* at 15–16). However, the Special Master stops there, and recommends the second sentence of the construction be "[a]n 'outer container' is separate from and cannot be integral with the contained objects." (*Id.* at 15).

Although the Court believes it understands the Special Master's intent with his proposed construction, and believes it is a correct construction when read in the context of his R&R, it

would seem that a jury would not be able to apply the construction without independently considering the meaning of "integral." As claim construction "is exclusively within the province of the court," *Markman v. Westview Instruments, Inc.*, 217 U.S. 370, 372 (1996), the construction shall be modified to read as follows:

> An "outer container" is a receptacle used to hold the "core." An "outer container" is different from the contained objects.

The Court feels that this construction more appropriately addresses the prosecution history arguments, traversing the rejection over Lovett, requiring that the "outer container" not be the "core," while not including the ambiguous requirement that the "outer container" not be "integral with" the "core."

### c. Term #2 "core comprising a plurality of fibers"

Special Master McIlvaine recommends construing "core comprising a plurality of fibers" as:

> The "core" is inside the "outer container." The "core" includes fibers. The "core" is separate from and cannot be integral with the "outer container." A fiber includes a bundle of filament strands. The core must contain at least two fibers.

(R&R at 1).

Plaintiff "has no objection to the first two sentences of this recommended construction but believes that the general principles of claim construction do not support the inclusion of the third, fourth, and fifth sentences in the final construction of the term." (Docket No. 107 at 7). Its argument as to the third sentence is consistent with that concerning "outer container," *supra*. Namely, that the record does not support the "integral with" requirement. (*Id.* at 7–8).

As to the remaining sentences, Plaintiff argues "that the intrinsic evidence of the patents-in-suit do not provide grounds for construing this claim term to include this language." (*Id.* at 8). It argues that "[n]othing in the specifications or prosecution histories of the patents-in-suit

7

suggest that the term, 'fiber,' should be defined as, and limited to, 'a bundle of filament strands.'" (*Id.*). Plaintiff asserts that, as its Counsel "explained at the [*Markman*] Hearing, fibers can be either monofilament strands or multifilament strands, and the terms of the patents-in-suit are not limited to either type." (*Id.* (citing H'rg Tr. at 91)[3]). It continues that "counsel for Defendants confirmed and clarified the understanding that the term 'fiber' encompasses monofilament and multifilament strands." (*Id.*). Yet, Plaintiff provides no explicit reasoning for its request to exclude the fifth sentence.

As to the third sentence, Defendants rely on their argument concerning the "outer container" construction. (Docket No. 109 at 5). As to the fourth sentence, Defendants claim that Plaintiff's assertion that "[n]othing in the specifications or prosecution histories of the patents-in-suit suggest that the term, 'fiber,' should be defined as, and limited to, 'a bundle of filament strands,'" "is facially incorrect as the [R&R] properly noted that the disclosure of 'suitable fibers for use in the present invention' at column 3 of the Patents-in-Suit consistently references 'fibers as 'bundles' or combination[s] of filaments.'" (*Id.* (citing R&R at 17)). They also argue that the recommended construction is consistent with Dr. Jacobs' affidavit and that Plaintiff has taken inconsistent positions regarding the construction of this term throughout the *Markman* proceedings. (*Id.* at 5–6).

Defendants finally point out that, while Plaintiff requests omission of the fifth sentence, it does not provide any reasoning for same. (*Id.* at 6). Further, they argue that, because "[t]he claim language at issue calls for 'a plurality of fibers,' . . . the Special Master logically construed this phrase as requiring 'at least two fibers.'" (*Id.*).

---
[3] The Official Transcript of the *Markman* Hearing was filed following submission of all claim construction briefing. Accordingly, it is cited as "H'rg Tr.," and can be found at Docket No. 110.

8

Against this backdrop, the Court will modify the third sentence in accordance with its holding, *supra*, regarding the "outer container" term. As to the fourth sentence, there appear to be two possible interpretations of the Special Master's recommended construction. Upon a reading of the R&R, it seems clear that the intended construction *requires* that a fiber *must* include a bundle of filament strands. (R&R at 16–17). But, without the benefit of the R&R's explanation, a jury could interpret the word "includes" as permissive, rather than mandatory (*i.e.*, that a fiber may, but does not have to, include a bundle of filament strands). As there are two potential readings to this sentence, the Court will modify it, such that it is beyond argument whether the limitation is mandatory or permissive.

The parties, fully aware of the Special Master's reasoning in the R&R, premise their arguments on the theory that the recommended construction is mandatory. (Docket Nos. 107, 109). In support of his recommendation, the Special Master cites to column 3 of the '514 patent,[4] which he characterizes as containing "multiple reference[s] to fibers as 'bundles' or combinations of filaments." (R&R at 17). This is also the basis for Defendants' argument against Plaintiff's objection. (Docket No. 109 at 5–6). Plaintiff responds that the examples discussed in column 3 do not support a limitation that a "fiber" must "include[] a bundle of filament strands." (Docket No. 107 at 8).

Upon review of column 3 of the Patents-in-Suit, the Court finds that it supports a permissive reading of the fourth sentence of the Special Master's recommended construction, rather than a mandatory meaning. Column 3 contains the word "bundle," in some form, three times. *See* '514 Patent at 3:23, 3:37, 3:51. The first instance discloses that "[t]he tubes or cords *can* be bundled together in a circumferential wrap." *Id.* at 3:23 (emphasis added). The second

---

[4] The '889 Patent is a divisional of the '514 Patent. *See* '889 Patent at 1:7–10. As such, their specifications are substantively identical. *Compare* '514 Patent Specification *with* '889 Patent Specification.

and third instances are in the context of discussions of prior art disclosures, wherein the fiber components of the prior art are "twisted bundle[s] of multiple strands of non-fibrillating monofilament." *See id.* at 3:51. As disclosed embodiments are generally not limiting, *see, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1323, these disclosures clearly do not support a requirement that the fiber disclosed in the Patents-in-Suit *must* include "a bundle of filament strands." Rather, they suggest that the fiber *could* include "a bundle of filament strands."

As the specifications do not provide a specific definition of the term, "fiber," the construing Court relies upon the plain and ordinary meaning of the term. *See GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) (citing *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). In this case, Defendants conceded at the *Markman* Hearing "that the plain and ordinary meaning of fiber *includes* a multifilament," while arguing that a monofilament is not within the scope of the claimed invention. H'rg Tr. at 84:21–23. However, nothing in the specifications explicitly excludes a monofilament embodiment. As such, the Court shall amend the Special Master's recommended construction to the following: A fiber may include a bundle of filament strands.

As to the fifth sentence, Plaintiff provides no reasoning for its request and Defendants' argument is compelling, as "plurality" is well known to mean "at least two." *See, e.g., Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370 (Fed. Cir. 2012). The Court, therefore, determines that the fifth sentence shall remain in the construction, in whole.

Based on the foregoing, the recommended construction shall be amended to read:

> The "core" is inside the "outer container." The "core" includes fibers. The "core" is different than the "outer container." A fiber may include a bundle of filament strands. The core must contain at least two fibers.

### d. Terms #5–7 "polyolefin," "polyethylene," and "polypropylene"

i. Recommended Construction

Special Master McIlvaine recommends construing "polyolefin" as "a polymer prepared by polymerization of an olefin. R&R at 1. He similarly recommends construing "polyethylene" as "a polymer prepared by polymerization of ethylene, and "polypropylene" as "a polymer prepared by polymerization of propylene." *Id.* at 2.

Defendants object to the Special Master's recommended constructions as to these three terms because he omitted their proposed 500 carbon backbone requirement. (Docket No. 105 at 4). Defendants raise two bases for their objection: 1) the recommended constructions are vague and will require additional construction; and 2) the Special Master misconstrued the testimony and documentary evidence offered by Defendants' expert. (*Id.*).

In support of their vagueness argument, Defendants contend that "[t]he Special Master's proposed construction of these terms leaves unanswered the question of what is the point where a 'molecule' is considered a polyolefin." (*Id.* at 5). As to their second point, Defendants argue that Special Master McIlvaine's conclusions as to these terms are inappropriate because, based on his "construction of the 'outer container' claim term, it is inherent that the selected materials comprising the 'outer container' must have the physical and mechanical characteristics to satisfy that claimed function." (*Id.* at 6). They conclude that "there is no *evidence* to refute Defendants' proposed construction." (*Id.* at 7 (emphasis in original)).

Plaintiff generally indicates agreement with the Special Master's recommendation and disagreement with Defendants' positions. (Docket No. 108 at 7–8). It concurs with Special Master McIlvaine's conclusion that Defendants did not produce sufficiently persuasive evidence as to the 500 carbon backbone limitation. (*Id.*). Otherwise, Plaintiff offers little in the way of specific argument.

11

The Court fully agrees with Special Master McIlvaine's reasoning and conclusion as to these terms, and his recommended constructions shall be adopted, in whole. The Court explains below.

Defendants' contention that the recommended constructions are unduly vague can be more appropriately addressed during summary judgment proceedings, in the form of an indefiniteness contention,[5] but, from the evidence presently before the Court, it is clear that these terms are amenable to construction; that Defendants' proposed minimum backbone carbon limits are not supported by the intrinsic record; and, that Defendants' expert testimony was unconvincing to import a limitation not otherwise in the intrinsic record.[6] Additionally, the Court disagrees with the Defendants as to the allegedly open question: at what point is a molecule considered a polyolefin. (Docket No. 105 at 5). The recommended construction is that "[a] 'polyolefin' is a polymer prepared by polymerization of an olefin." Per that construction, a polymer results from polymerization. While circular, the question is answered.[7]

Further, the Court finds unconvincing Defendants' contention that Special Master McIlvaine did "not demonstrate a proper consideration of the evidence supporting Defendants' proposed construction," as the R&R thoroughly discusses the relevant evidence as to these claim terms. (R&R at 21–26). Not only does the Special Master address each of Defendants' submissions and their expert's testimony at the *Markman* hearing, but he indicates the reasons he does not find them supportive of Defendants' proposed construction. (*Id.*). Indeed, he concludes

---

[5] *See* Court's ruling at p. 3, *supra*.
[6] Especially telling is the fact that Defendants' expert, Dr. Jacobs, conceded that their 500 number is not even necessarily the appropriate number, admitting on cross examination that the number of backbone carbons necessary to create a molecule with the appropriate physical characteristics may be as low as 400, H'rg Tr. at 148–49, and then as low as 357 in his supplemental report, (Docket No. 100-1). The fact that Defendants' own expert cannot pinpoint a number of backbone carbons is fatal to Defendants' proposal to create a threshold minimum of 500 backbone carbons.
[7] The Court is cognizant that lay and/or expert witness testimony will likely be necessary at trial to prove whether the accused infringing product infringes the claims so defined, but believes that this is a proper use of the jury in a patent litigation suit.

that, due to the inherent contradiction and uncertainty of Defendants' own expert evidence, they have failed to proffer evidence sufficient to import an extrinsic limitation into the Patents-in-Suit. (*Id.* at 26). In the Court's estimation, such analysis demonstrates proper assessment of Defendants' evidence and arguments. And, the Court having reviewed the matter *de novo*, as it must, agrees.[8]

Finally, Defendants' argument that the Special Master's recommended constructions are in conflict with his recommendation as to "outer container" fall flat. Neither party introduced evidence as to what physical properties are necessary to perform the function of "hold[ing] 'the core.'" Defendants appear to contend that only fully solid-state (*i.e.*, non-wax state) polyolefins are capable of so functioning. (*See* Docket No. 105 at 6–7). But, they provide no supporting evidence of record that this is true. Further, as wax containers exist (*e.g.*, Nik-L-Nip™ wax juice bottles), Defendants' argument is unconvincing. Accordingly, Defendants' objections are overruled.

> **e. Term #9 & 10 "specified temperature" & "the outer container of the reinforcement composition [is/being] constructed such that when [a/the] specified temperature is reached in the asphalt composition, the plurality of fibers are released from the outer container"**

Special Master McIlvaine recommends construing "specified temperature" as meaning "the temperature which causes the 'outer container' to melt or dissolve." R&R at 2. He further recommends construing "the outer container of the reinforcement composition [is/being] constructed such that when [a/the] specified temperature is reached in the asphalt composition, the plurality of fibers are released from the outer container" as meaning: The "outer container"

---

[8] The Court further notes that she and her clerks sat through the entire *Markman* Hearing, and, thus, benefits from observation of and participation in the live argument and testimony.

13

disperses when the temperature which causes it to melt or dissolve is reached and as a result, the fibers in the "core" are released. *Id.*

Defendants reassert that these terms are insolubly ambiguous, and that the Special Master's recommended constructions would make the terms more ambiguous. (Docket No. 105 at 7–8).

Plaintiff counters that these terms are not insolubly ambiguous, as they can be readily understood based on the context in which they are used in claims, with reference to the specifications of the Patents-in-Suit. (Docket No. 108 at 9). It points out that "[t]he specifications for each of the '514 and '889 Patents repeatedly describe[] the dispersal of the outer container in the asphalt material. Both specifications state that, as a transition temperature is reached or exceeded in the asphalt or chamber containing the asphalt, the container is dispersed within the asphalt material." (*Id.*). Plaintiff further urges that "the specification discloses that the transition temperature is the temperature at which the outer container melts or dissolves, such as its melting point." (*Id.*).

Again, when the specification does not provide a specific definition of a claim term, the construing Court relies upon the plain and ordinary meaning. *See GE Lighting Solutions, LLC*, 750 F.3d at 1309 (citing *Thorner*, 669 F.3d at 1365). Reading the Patents-in-Suit, it is apparent that the Special Master's recommended constructions for these terms are appropriate. The terms are clearly amenable to construction, as even a laic reading of the claims provides context for their meaning. *Cf. Fisher-Price, Inc. v. Graco Children's Prods., Inc.*, 154 Fed.Appx. 903, 907 (Fed. Cir. 2005).

Further, Defendants' argument that the circularity of the constructions of these terms is evidence of their indefiniteness cannot prevail because, given the context, the claim terms must

14

have a parallel meaning. As stated above, further indefiniteness arguments may be made at summary judgment. Accordingly, Defendants' Objections are overruled.

### f. Terms #11, 12, 16, & 17 "the asphalt material," "associated chambers located up-line and down-line of the asphalt mixing machine," "the outer container is dispersible," & "the outer containment material"

Special Master McIlvaine recommends construing:

- "the asphalt material" as meaning "asphalt which includes, but is not limited to, aggregate and binder;
- "associated chambers located up-line and down-line of the asphalt mixing machine" as meaning "machinery that is located in the asphalt manufacturing process prior to field placement;"
- "the outer container is dispersible" as meaning "the outer container melts or dissolves;" and
- "the outer containment material" as meaning "the material which makes up the 'outer container.'"

R&R at 2–3.

Defendants repeat their stance that it was inappropriate for the Special Master to move beyond their indefiniteness arguments at this stage as to all of these terms. (Docket No. 105 at 9). Defendants provide no other specific grounds for their objections to these terms and, presumably, though not explicitly, rely upon their previous briefing. (*Id.*)

Plaintiff points to intrinsic usage supportive of the Special Master's constructions of "asphalt material" and "associated chambers located up-line and down-line of the asphalt mixing machine," and argues that Defendants' indefiniteness arguments are more appropriately raised by

15

dispositive motion and briefing. (Docket No. 108 at 10–11). Plaintiff does not provide any argument as to the terms "the outer container is dispersible" and "the outer containment material." (*Id.*).

Given the sparse briefing concerning these objections, it is difficult to truly assess their merits. However, upon review of the R&R and the Patents-in-Suit, the Court finds that the terms are amenable to construction, and the Special Master's recommended constructions are supported either through the intrinsic record and/or plain meaning. As such, the Special Master's recommended constructions as to each term are adopted by the Court. As previously noted, Defendants shall have the opportunity to renew their indefiniteness arguments at the summary judgment stage.

### g. Remaining Terms

Neither party objected to the Special Master's R&R as to the recommended constructions of the following terms:

- "the outer container having the core contained therein;"
- "encompassing the core within an outer container;"
- "the outer container comprising a polyolefin selected from the group consisting of polyethylene, polypropylene, and mixtures thereof;"
- "the core contained within the outer container;" and
- "an outer container which encompasses the core."

R&R at 1–3. As such, and having performed an independent, *de novo* review of same, the Court adopts the Special Master's recommended constructions for these terms.

### IV. CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that the Defendants' objections are OVERRULED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Adopt in part and modify in part the Special Master's April 1, 2015 Report and Recommendation, (Docket No. [106]), is GRANTED, in part, and DENIED, in part.

IT IS FINALLY ORDERED that Special Master McIlvaine's R&R on Claim Construction is ADOPTED, in part, as outlined, above. An appropriate Claim Construction Order follows.

<u>s/ Nora Barry Fischer</u><br>
Nora Barry Fischer<br>
United States District Judge

Date: June 11, 2015
cc/ecf: All counsel of record.

Special Master John W. McIlvaine, III, Esq.